IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
                           SOUTHERN DISTRICT


- - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA,        :
                                 :      Criminal No. 1996-00187
        v.                       :
                                 :
LUIS NELSON GAMBOA, et al,       :
                                 :
              Defendants.         :      Greenbelt, Maryland
                                 :
- - - - - - - - - - - - - - - x      February 27, 1997



                            **HEARING**



BEFORE:                   THE HONORABLE PETER J . MESSITTE, Judge

APPEARANCES:              DEBORAH JOHNSTON, Esq.
                          Office of the United States Attorney
                          6500 Cherrywood Lane,
                          Suite 400
                          Greenbelt, MD 20770
                                On Behalf of the Government

                          RICHARD BITTNER, Esq.
                          Law Office of Richard C. Bittner
                          7 Central Avenue
                          Suite 201
                          Glen Burnie, MD 21061
                                On Behalf of the Defendant

                          MARLENA BARRETT, Postal Inspector




Proceedings recorded by electric sound recording, transcript
produced by transcription service.

```
Audio Operator:          Ms. Peterson

Transcription Company:   CompuScribe
                         5100 Forbes Boulevard,
                         Suite 101
                         Lanham, MD 20706
                         (301) 577-5882
```

lnc                                                                          3

I N D E X

                                                                        Page

Preliminary Matters                                                        4

Court Qualifies Defendant Re: Charges                                      4

Comments by Deborah Johnston, Esq.
      Attorney for the Government                                         10

Court and Defendant Re:  Advise of Rights                                 18

Statement of Facts, by Deborah Johnston, Esq.                            21

Ruling by Judge Messitte                                                  24

Keynote:  "---" indicates inaudible in transcript.

1                          **P R O C E E D I N G S**

2              THE CLERK:  PJM-96-0187, United States of America

3    versus Luis Nelson Gamboa.  The matter is now ---

4              THE COURT:  All right, counsel, identify yourselves,

5    the Government and then the defendant.

6              MS. JOHNSTON:  Good afternoon, Your Honor, Deborah

7    Johnston on behalf of the Government.  Seated with me at

8    counsel table is postal inspector, Marlena Barrett.

9              THE COURT:  All right.  Defendant?

10             MR. BITTNER:  Your Honor, good afternoon, may I

11   please the Court, Richard Bittner on behalf of Luis Nelson

12   Gamboa who is present.

13             THE COURT:  All right.  I understand we have a plea

14   agreement.  Please swear the defendant.

15             (Whereupon, the defendant was sworn.)

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  All right, please have a seat sir and

18   tell me your name.  Have a seat.  Tell me your name.

19             THE DEFENDANT:  Luis Nelson Gamboa.

20             THE COURT:  Your age, sir?

21             MR. BITTNER:  Your Honor, Mr. Gamboa has a

22   hearing --

23             THE COURT:  All right, I will speak loudly.  Tell me

24   your age?

25             THE DEFENDANT:  49 years old.

1           THE COURT:  All right, would it be easier for you to

2    stand up, you don't have to -- you can sit down.  What is your

3    home address?

4           THE DEFENDANT:  3704 Bradbury(sic) Street, Silver

5    Spring, Maryland.

6           THE COURT:  Are you married or single?

7           THE DEFENDANT:  Married.

8           THE COURT:  Do you live with your wife?

9           THE DEFENDANT: I live with my wife.

10          THE COURT:  Do you have any children?

11          THE DEFENDANT:  Four children.

12          THE COURT:  And they are all with you?

13          THE DEFENDANT:  They are with me.

14          THE COURT:  What is your occupation?

15          THE DEFENDANT:  I am a self employed paint

16   contractor.

17          THE COURT:  All right, do you have a company?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Is there a name for your company?

20          THE DEFENDANT:  Nelson Gamboa Decorating.

21          THE COURT:  Where are you located -- at your home

22   address?

23          THE DEFENDANT:  The same location.

24          THE COURT:  How far did you go in school?  What

25   grade?

1          THE DEFENDANT:  I went to sixth grade.

2          THE COURT:  Are you an American citizen?  Are you an

3    American citizen?

4          THE DEFENDANT:  Just resident.

5          THE COURT:  Are you under the influence of any kind

6    of alcohol or drug this afternoon?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  All right.  Now, Mr. Gamboa, you have

9    been charged with a number of criminal offenses primarily mail

10   fraud, do you understand that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Have you seen the document entitled

13   "Indictment" that charges you with these offenses?  There is a

14   document that charges you with a number -- 14 different

15   charges?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Have you seen that document?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Did you go over it with Mr. Bittner?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Basically I am not going to go over

22   every one in detail but basically it says that you were in a

23   conspiracy with -- sorry, you were involved with a number of

24   other individuals involved with mail fraud and those

25   individuals included Nicholas Cardenas, Miguel Gamboa, Teodora

1    Etienne, Alejandra Rojas, Percy Richard Cardenas and Ivan

2    Gonzalez, do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And the charges are in 14 different

5    charges that each of you in one fashion or another, either

6    directly or aiding and abetting the others, caused the

7    insurance companies to make certain payments that you were not

8    entitled to, do you understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Just so that you look through and see, I

11   won't give all of the particulars but if you look at in the

12   indictment, count 1, deals with a transaction that occurred on

13   or about June 21, 1991.  And involved a letter to Joel Skirble

14   of Frontier Adjuster in Towson, Maryland.  Count 2 deals with a

15   transaction on or about September 5, 1991, involving a letter

16   to Melissa Posey of Hartford Insurance of Greenbelt.

17             Count 3 deals with a letter to Helen Kelly of

18   Nationwide Insurance in Greenbelt on or about June 19, 1991.

19   Count 4 says sometime in September of 1991, there were

20   directions that had a letter sent from Nationwide Insurance to

21   Nelson Gamboa and Edward Bow.

22             Count 5 says on or about December 2, there was a

23   letter sent to Kirk Hoffer, at Allstate Insurance in Columbia,

24   Maryland.  Count 6, on or about March 19, 1993, there was a

25   letter from Kirk Hoffer sent to Alejandro Rojas and Edward Bow.

lnc                                                                                      8

1    Count 7, says on or about March 19, 1993, there was a letter

2    addressed to Miguel Gamboa and Edward Bow from Kirk Hoffer,

3    Allstate Insurance in Columbia.

4            Count 8, on or about May 24,1993, a letter was

5    addressed to Mr. Neilson Marcenak, Progressive Insurance

6    Company, Baltimore.  Count 9, on or about February 18, 1993, a

7    letter was addressed to Allstate in Roanoke, Virginia from

8    suburban Maryland.

9            Count 10, on or about March 26, 1993, a letter was

10   caused to be sent from Lisa Harrington, Allstate Insurance

11   Baltimore. Count 11, on or about April 2, 1993, a letter was

12   placed in the mail to Marlene J. Stetsman at Maryland

13   Automobile Insurance Fund or MAIF in Annapolis.

14           Count 12, on or about July 28, 1993, a letter was

15   addressed to Laura Newman, General Accident Insurance,

16   Gaithersburg.  Count 13, on or about September 30, 1992, a

17   letter was addressed to Ms. Willett(sic) Bell, at Maryland

18   Automobile Insurance Fund Annapolis.

19           Count 14, was -- there was caused to be a letter

20   sent to Teodora Etienne and Rudolfo Ramos from Ms. Willett Bell

21   of  MAIF in Annapolis.  Do you see all of those charges?

22           THE DEFENDANT:   Yes.

23           THE COURT:  Do you understand you are charged in

24   each of those counts, do you understand that?  All right.  Now

25   earlier in these proceedings, you appeared and entered a not

1    guilty plea, is that correct?

2                THE DEFENDANT:  Yes.

3                THE COURT:  And I understand now you have reached an

4    agreement with the Government whereby you are prepared to enter

5    a guilty plea to is it just one count?

6                MS. JOHNSTON:  Yes, Your Honor.

7                THE COURT:  Count 12, is that correct?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  And is that the plea that you are

10   prepared to enter at this time, a guilty plea to count 12?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  All right and it is your understanding

13   that the Government will not prosecute you on the other

14   charges, is that correct?

15               THE DEFENDANT:  Yes.

16               THE COURT:  I have in front of me, a letter

17   addressed to Mr. Bittner, dated January 15, 1997, it consists

18   of seven pages.  On the sixth and seventh pages there are

19   signature lines for Ms. Johnston, for Luis  Nelson Gamboa and

20   Richard C. Bittner, Esquire, is that your agreement with the

21   Government regarding the plea?

22               THE DEFENDANT:  ---

23               THE COURT:  Is that document the agreement with the

24   Government?  Do you have a copy of that document?

25               MR. BITTNER:  Yes, Your Honor.

lnc                                                                    10

 1          THE COURT:  Would you look at it and see if that is

 2   the plea agreement you reached with the Government?

 3          MR. BITTNER:  Yes, Your Honor.

 4          THE COURT:  All right, I have the original of the

 5   document here.  I am going to ask Ms. Johnston now to state

 6   what the basic terms of the agreement are, because I need to

 7   know that you know what they are and then I am going to ask you

 8   whether that constitutes the agreement as you understand it.

 9   And whether there are any other promises that I haven't heard

10   about.  Do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Ms. Johnston?

13          MS. JOHNSTON:  Yes, Your Honor.  The substance of

14   the plea agreement is as follows.  Mr. Luis Gamboa agrees to

15   plead guilty to count 12 of the indictment pending against him

16   in which he is charged with mail fraud, a violation of 18 USC

17   Section 1341.  He understands that the maximum sentence for

18   this offense is imprisonment of not more than 5 years followed

19   by a term of supervised release of not more than 3 years and a

20   fine of $250,000.

21          He also understands that he must pay $50 as a

22   special assessment which will be due at the time of sentencing.

23   Furthermore, he understands that the Court may order him to

24   make restitution.  He also understands that under the terms of

25   this agreement, that he has agreed to cooperate with the United

1   State's Attorney's office and the terms and conditions of this

2   cooperation are as follows.

3        He must fully and truthfully respond to all

4   questions put to him by federal law enforcement authorities.

5   He must fully and truthfully disclose to the Government

6   everything that he knows about this scheme to defraud which is

7   described in the indictment to which he has entered his guilty

8   plea.

9        And he must also disclose anything he knows about

10  any other matters as to which the Government may choose to

11  inquire.  His cooperation includes not only complete disclosure

12  of information that he has but he must also testify fully and

13  truthfully before all grand juries and at all trials in cases

14  in which his testimony might be relevant.

15       He also is required not to commit any offense in

16  violation of federal, state or local laws between the date of

17  this agreement and his sentencing in this case.  He further

18  understands that he -- that a sentencing guideline range will

19  be determined by the Court.  That the Court will impose a

20  sentence within that guideline range unless the Court finds

21  that there is a basis for a departure because there exists an

22  aggravating or mitigating circumstance of a degree or kind not

23  contemplated by the sentencing commission.

24       Further the agreement provides that the Government

25  and the defendant agree and stipulate to the following

1   applicable sentencing guideline factors.  First the parties

2   agree and stipulate that the base offense level is 6.  And that

3   that base offense level is increased by 7 levels because the

4   fraud loss cause or foreseen by the defendant exceeds by

5   $125,000.

6           Furthermore the parties agree or stipulate that the

7   offense involve more than minimal planning or a scheme to

8   defraud  more than one victim and therefore an enhancement of

9   two additional levels is applicable.  The parties further agree

10  and stipulate that the offense level shall be increased by an

11  additional two levels for the defendant's role as an organizer

12  or leader pursuant to 3(B)1.1 (c).

13          This results in an adjusted offense level, the

14  parties stipulate of 17.  Because the defendant has accepted

15  his responsibility for his conduct, the parties stipulate that

16  he is entitled to a three level reduction in the criminal

17  offense level resulting in a criminal offense level of 14.

18          The defendant understands that if he provides

19  substantial assistance in the investigation of the prosecution

20  of others, the Government will move under 5(K)1.1 of the

21  sentencing guidelines for a downward departure of two levels.

22  The defendant understands that under this agreement, the

23  Government has the sole discretion in determining whether he

24  has provided such substantial assistance and therefore, whether

25  the motion for the downward departure under 5(K)1.1, should be

1   made.

2          Both parties understand that neither the U.S.

3   Probation office or the Court is bound by this stipulation and

4   that the Court will at sentencing with the aide of a pre-

5   sentence report, determine the relevant factors as to

6   sentencing.  The defendant understands that if the Court

7   determines factors different from those contained in the

8   stipulation, he will not be allowed to withdraw his guilty

9   plea.

10          The defendant also understands there is no agreement

11   as to his criminal history or criminal history category and

12   that the criminal history could alter his offense level if the

13   offense was part of a pattern of criminal conduct from which he

14   derived a substantial portion of his income.

15          The defendant also understands that if he engages in

16   any conduct after the date of this agreement which would

17   justify finding of obstruction of justice under 3© 1.1, then

18   the Government would be relieved of its responsibilities under

19   the terms of this agreement, the defendant however would not be

20   allowed to withdraw his guilty plea.

21          If the defendant fulfills all of his obligations, he

22   understands that at the time of sentencing, the Government will

23   bring to the Court's attention, the nature and extent of his

24   cooperation and testimony.  At that time of sentencing, the

25   Government pursuant to the terms previously discussed, that is

lnc                                                                        14

1    if the Government determines that he has provided substantial

2    assistance, then the Government will move for a downward

3    departure from the guidelines pursuant to 5(K)1.1.

4             Furthermore the Government will move to dismiss all

5    counts of the indictment against him other than the counts to

6    which he has entered his plea.  And at sentencing, the

7    Government will recommend a sentence at the low end of the

8    guidelines range provided the Court determines that criminal

9    offense level to be at least a level 12.

10            The Government also agrees that the Government will

11   not use the information that the defendant discloses to it

12   under the terms of this agreement against him, either directly

13   or indirectly.  In this case or any other criminal case except

14   should he violate the condition of this agreement as set forth

15   in paragraph 13 and 14.

16            In regards to the right to appeal, the defendant and

17   the Government have agreed to waive their right to appeal,

18   reserving only the right to appeal from a sentence resulting

19   from an adjusted base offense level greater than 14 or less

20   than 12.  I believe that -- in addition the defendant  agrees

21   and waives his right to -- any rights under the Speedy Trial

22   Act and understands that a sentencing may be delayed until his

23   cooperation has been completed so that at sentencing, all

24   relevant information can be provided to the Court.  I believe

25   that is the substance of the plea agreement.

1          THE COURT:  Mr. Bittner, does that basically set

2    forth your understanding?

3          MR. BITTNER:  Your Honor, that is our understanding

4    of the agreement.  The only other matter that we had discussed

5    with the Government was contained by way of a letter to me by

6    Ms. Johnston would be that the Government and the defendant at

7    sentencing would recommend that Mr. Gamboa be allowed to

8    report, voluntarily surrender himself to begin the imposition

9    of the sentence.  Other than that, that is an accurate

10   statement of the agreement.

11         THE COURT:  Okay, there are a couple of matters,

12   Mr. Gamboa, I want to go over with you.  First of all, do you

13   understand that the maximum statutory penalty for the offense

14   that you are pleading to is not  more than five years

15   imprisonment and a term of supervised release of not more than

16   3 years and a fine of up to $250,000.  Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And the Court may also -- is there any

19   sort of restitution to be imposed, there would be.

20         MS. JOHNSTON:  There will be an issue of

21   restitution.

22         THE COURT:  The Court may also then impose in

23   addition to a fine, any restitution amount that the Court deems

24   appropriate, do you understand that?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  In other words, you will have to pay

2    back money that was illegally taken is that clear?

3          THE DEFENDANT:  ---

4          MR. BITTNER:  You will have to pay back any money

5    that was illegally taken.

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that I can impose that

8    as part of your penalty?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Now, there has been some

11    reference to sentencing guidelines, have you talked about

12    sentencing guidelines with Mr. Bittner?

13          THE DEFENDANT:  Yes.

14          THE COURT:  You understand that this is a table that

15    indicates the range of incarceration and the range of

16    supervised release and the range of fine in given cases, do you

17    understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And you get a score depending on the

20    nature of the offense, how aggravated it is and or not

21    aggravated and then you get a score based on your own criminal

22    history, do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And what those two calculations then,

25    the Court is lead to a certain range of time would be

1   appropriate as a sentence in your case, do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And you understand that I can't finally

4   determine what the guideline range in your case will be until

5   after the pre-sentence report is prepared, is that clear?  You

6   have to answer because you are on tape -- I think we are on

7   tape.

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now further you understand that

10  depending on the circumstances, I may be able to go outside the

11  guidelines that is more severe than the guidelines show, do you

12  understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And you would not for that reason be

15  able to withdraw your plea, do you understand that?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And even if I give a sentence that is

18  more severe than you expect, or more severe than the Government

19  recommends, you still can't withdraw your plea for that reason,

20  do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  All right.  There would be in this case

23  a $50 special assessment as well at the time of sentencing.  Do

24  you understand that you are not required to plead guilty?  You

25  are not required to plead guilty, do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You could plead not guilty and the

3   Government would then have to prove you guilty, do you

4   understand that?

5          THE DEFENDANT:  I understand.

6          THE COURT:  All right, it would have to prove you

7   guilty beyond a reasonable doubt which is a heavy burden, is

8   that clear?

9          THE DEFENDANT:  Yes, it is.

10          THE COURT:  Do you understand that by pleading

11   guilty, you will be admitting that you committed this offense?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Are you on any sort of parole or

14   probation or supervised release  apart from this case?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  You understand that there are certain

17   rights you give up when you plead guilty?  I am going to go

18   over those with you at this time.  You  have the right to a

19   jury trial where 12 people would be selected randomly from the

20   voter list of the state.  Your attorney could ask questions to

21   assure that they would be fair and impartial.

22          Each of those jurors would have to be convinced that

23   you were guilty beyond a reasonable doubt before you could be

24   found guilty, is that clear?

25          THE DEFENDANT:  I understand sir.

1          THE COURT:  Or you could have a trial before a Judge

2    and the Judge would have to be convinced of your guilt beyond a

3    reasonable doubt before you could be found guilty.  You would

4    have the assistance of -- you would have the right to an

5    assistance of an attorney throughout and if you couldn't afford

6    one, one could be provided for you at no cost.

7          You would be presumed innocent unless and until

8    proven guilty.  You would not have to testify in a case.  You

9    could not be made to testify and the prosecutor could not

10   comment on that fact to the Judge or jury.  You would have a

11   right to confront and cross examine the Government's witnesses

12   and you could call your own witnesses.  Is that clear?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  You give up all of these rights when you

15   plead.  Now Mr. Bittner, was there any basis for a motion to

16   suppress?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Let Mr. Bittner -- Mr. Bittner?

19         MR. BITTNER:  No, Your Honor.

20         THE COURT:  Just to be clear, Mr. Gamboa, if you

21   think the Government denied any of your rights as far as

22   seizing evidence illegally, taking a statement from you

23   illegally, delaying of the prosecution or whatever, you could

24   file motions before trial and the Judge will decide whether or

25   not your rights have been violated.

1           The decision by the Judge could have some

2    consequence on your -- on the finding of guilt or innocence, do

3    you understand that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  That when you plead guilty, you give up

6    the right to challenge the legality of the Government's acts,

7    is that understood?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you understand then that by pleading

10   guilty, there won't be any further trial?  You are waiving your

11   right to a further trial?

12          THE DEFENDANT: Yes, sir.

13          THE COURT:  All right.  And there was -- was there

14   not a waiver of appeal, Ms. Johnston?

15          MS. JOHNSTON:  Your Honor, there was a waiver of

16   appeal with the reserving the right to appeal a sentence

17   resulting from an adjusted base offense level greater than 14

18   and less than 12.

19          THE COURT:  All right.  You have limited the right,

20   I see that -- you have limited your right of appeal to a

21   situation where your base offense level is either -- you do

22   have the right, if it is less than 12 and you have the right if

23   it is more than 14.  Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  But if your base offense level is 14 or

1  less, you have waived your right to appeal, do you understand

2  that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Is that something you are agreeable to?

5  Is that something that you have agreed to -- is that voluntary

6  on your part?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Now what I am going to do is

9  ask Ms. Johnston to recite the facts that the Government feels

10 it could prove if this matter went to trial.  And after that, I

11 am going to ask you whether those facts are true and accurate.

12 You have been sworn to tell the truth under oath and so you

13 must answer honestly.  If you don't, you will be subject to

14 prosecution for perjury or false statement.  Do you understand

15 that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Ms. Johnston, in a loud voice.

18         MS. JOHNSTON:  Your Honor, the parties have agreed

19 and stipulated to the following facts.  The parties have also

20 agreed that these facts do not encompass all of the facts had

21 this matter gone to trial.

22         The facts are as follows.  From January 1991 through

23 July 1994, Luis Nelson Gamboa, Teodora Etienne, Richard Percy

24 Cardenas and Nicholas Martin Cardenas were engaged in a scheme

25 to defraud insurance companies by staging and fabricating motor

1    vehicle accidents and by having inflated and cost wage loss

2    claims for both actual and staged accidents.

3            In 1993, Ivan Gonzalez, Luis Nelson Gamboa, using

4    the alias of Luis Sanchez and Richard Percy Cardenas using the

5    alias of Carlos Zambora, fabricated a motor vehicle accident.

6    They claimed that they were in a vehicle which was being driven

7    by Ivan Gonzalez.  Their vehicle was stopped at a traffic light

8    when it was struck in the rear by a vehicle owned and operated

9    by ANA Plumbing Service.

10           Gamboa, Cardenas and Gonzalez retained the services

11   of an attorney.  On or about July 28, 1993, the attorney

12   mailed through the United States postal service, a letter to

13   Ms. Laura Newman, General Accident Insurance, located in

14   Gaithersburg, Maryland, notifying General Accident of this

15   accident and his client's fabricated claims for loss wages and

16   personal injuries.

17           In addition, the defendant participated as a

18   claimant or assisted with the preparation of false wage loss

19   statements in approximately 9 other accidents which resulted in

20   a total loss of the insurance carries in excess of $120,000.

21           THE COURT:  Is that an accurate statement,

22   Mr. Gamboa?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Do you want to add to that, Mr. Bittner?

25           MR. BITTNER:  No, Your Honor.

1          THE COURT:  Now with regard to the agreement that

2     you have made with the Government, has anybody threatened or

3     coerced you in any to agree to that?  Mr. Gamboa, did anybody

4     threaten you or coerce you to get you to agree?

5          THE DEFENDANT:  No.

6          THE COURT:  Is the agreement entirely set forth in

7     this document and as recited by Ms. Johnston?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Are there any terms that I don't know

10    about other than what Mr. Bittner, that the Government is going

11    to recommend voluntarily surrender that I haven't been told

12    about?

13         THE DEFENDANT:  No, Your Honor.

14         THE COURT:  All right.  Are you pleading guilty

15    because you are guilty and for no other reason?

16         THE DEFENDANT:  Because I did it, Your Honor.

17         THE COURT:  All right, is there anything that you

18    don't fully  understand about these proceedings?

19         THE DEFENDANT:  I understand.

20         THE COURT:  Do you need to say anything to

21    Mr. Bittner or ask him a question?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  All right.  Taking into account

24    everything said, do you still chose to plead guilty to this

25    charge?

1                    THE DEFENDANT:  Yes, Your Honor.

2                    THE COURT:  All right the Court finds that the

3    defendant's plea has been made knowingly and voluntarily and

4    the Court finds that there are sufficient facts to find

5    defendant guilty of the crime charged beyond a reasonable

6    doubt.  The Court further finds that pursuant to sentencing

7    guidelines 6(B)1.2(A), the plea conforms to the purposes of

8    sentencing and the policies of the sentencing guidelines, and

9    adequately reflects the seriousness of the actual offense

10   behavior, the Court accepts the plea and enters a finding of

11   guilty.

12                   The Court will embody the plea agreement in its

13   judgement and sentence.  June 11 or 12, either way?  June 11,

14   9:30 a.m.?  All right.  Any issue on bond?  Prepared to

15   continue the defendant on present bond?

16                   MS. JOHNSTON:  We are prepared to continue on.

17                   THE COURT:  All right.  Same terms and conditions

18   then, Mr. Bittner, if you will explain to your client.

19                   MR. BITTNER:  Yes, Your Honor.

20                   THE COURT:  I will see you back here then and I will

21   order a  pre-sentence report.

22                   (Whereupon, the hearing concluded.)

23

24

25

lnc                                                                               25

C E R T I F I C A T E

       I certify that the foregoing is a correct

transcript from electronic sound recording of the proceedings

in the above-entitled matter.

/s/ Lisa Contreras                          March 17, 2013
Lisa Contreras                                   Date
Certified Transcriber
Certificate No. CET**D-474